| | |
|---|---|
| 1 | KAREN P. HEWITT |
| | United States Attorney |
| 2 | JOSEPH J.M. ORABONA |
| | Assistant U.S. Attorney |
| 3 | California State Bar No. 223317 |
| | Federal Office Building |
| 4 | 880 Front Street, Room 6293 |
| | San Diego, California  92101-8893 |
| 5 | Telephone: (619) 557-7736 |
| | Email: joseph.orabona@usdoj.gov |
| 6 | |
| | Attorneys for Plaintiff |
| 7 | United States of America |

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08CR1545-JAH |
| | ) | |
| Plaintiff, | ) | Date:   August 4, 2008 |
| | ) | Time:   8:30 a.m. |
| | ) | Place:  Courtroom 11 |
| v. | ) | |
| | ) | The Honorable John A. Houston |
| RODRIGO GUEVARA-OSUNA, | ) | **UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS TO** |
| Defendant. | ) | |
| | ) | **(A)   COMPEL DISCOVERY AND PRESERVE EVIDENCE; AND** |
| | ) | **(B)   GRANT LEAVE TO FILE FURTHER MOTIONS** |
| | ) | |
| | ) | **TOGETHER WITH STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES** |

The plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Joseph J.M. Orabona, Assistant United States Attorney, hereby files its Response in Opposition to Defendant's above-referenced Motions.  This Response in Opposition is based upon the files and records of the case, together with the attached statement of facts and memorandum of points and authorities.

//

//

**I**

**STATEMENT OF THE CASE**

On May 14, 2008, a federal grand jury in the Southern District of California returned an Indictment charging Rodrigo Guevara-Osuna ("Defendant") with being a deported alien found in the United States, in violation of 8 U.S.C. § 1326(a) and (b). On May 27, 2008, Defendant was arraigned on the Indictment and pled not guilty. Defendant filed its discovery motions on June 18, 2008. The United States hereby files the following response in opposition to these motions.

**II**

**STATEMENT OF FACTS**

**A.    OFFENSE CONDUCT**

On February 27, 2008, at approximately 11:00 a.m., Border Patrol Agent J. Flores was performing line watch duties near the town of Jacumba, California, in an area that is adjacent to the U.S./Mexico international border and approximately 25 mile east of the Tecate, California, Port of Entry. Agent Flores was driving west on Interstate 8 when he observed Defendant walking north of Interstate 8 near Call Box 8-771. Agent Flores approached Defendant and identified himself as a U.S. Border Patrol Agent. Agent Flores performed a field interview of Defendant, and Defendant admitted that he was a citizen and national of Mexico without any proper immigration documents that would allow him to enter or remain legally in the United States. Agents Flores arrested Defendant and transported him to the Boulevard Border Patrol Station for processing.

**B.    DEFENDANT'S IMMIGRATION HISTORY**

A records check confirmed that Defendant is a citizen and national of Mexico, and that Defendant was ordered excluded, deported, and removed from the United States to Mexico pursuant to an order issued by an immigration judge on August 8, 1997. Defendant was physically removed from the United States to Mexico on four prior occasions: (1) February 2, 1993; (2) August 9, 1997; (3) October 9, 2001; and (4) October 6, 2006. After Defendant's last deportation, there is no evidence in the reports and records maintained by the Department of Homeland Security that Defendant applied to the U.S. Attorney General or the Secretary of the Department of Homeland Security to lawfully return to the United States.

### C. **DEFENDANT'S CRIMINAL HISTORY**

Defendant has an extensive criminal history. The United States propounds that Defendant has at least thirteen criminal history points placing him in Criminal History Category VI. The following is a summary of defendant's criminal history:

| CONVICT DATE | COURT OF CONVICTION | CHARGE | TERM |
|---|---|---|---|
| 7/02/1975 | Cal. Superior Ct. Los Angeles | Cal. Penal Code § 496 – Receipt of Stolen Property | 30 days jail, 2 yrs probation |
| 1/18/1977 | Cal. Superior Ct. Ventura | Cal. Vehicle Code § 23103 – Reckless Driving | 2 yrs summary probation |
| 2/08/1978 | Cal. Superior Ct. Los Angeles | Cal. Vehicle Code § 23103 – Reckless Driving | 2 yrs summary probation |
| 5/05/1978 | Cal. Superior Ct. Los Angeles | Cal. Vehicle Code § 23102(A) – DUI (misd.) | 1 yr summary probation |
| 7/24/1991 | Cal. Superior Ct. Los Angeles | Cal. Penal Code § 459 – Second-Degree Burglary (felony) | 180 days jail, 3 yrs probation |
| 6/16/1992 | | Probation revoked | 16 months prison |
| 6/16/1992 | Cal. Superior Ct. Los Angeles | Cal. Penal Code § 459 – Second-Degree Burglary (felony) | 16 months prison |
| 12/15/1993 | Cal. Superior Ct. Los Angeles | Cal. Vehicle Code § 10851(A) – Taking Vehicle without Consent (felony) | 2 years prison |
| 9/14/2000 | Cal. Superior Ct. Los Angeles | Cal. Penal Code § 459 – First-Degree Residential Burglary (felony) | 2 years prison |
| 10/01/2004 | U.S. District Ct. Los Angeles | 8 U.S.C. § 1325 – Illegal entry (misd.) and Illegal Entry (felony) | 30 months prison, 1 yr supervised release |

//

//

//

//

//

//

//

**III**

**THE UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS ALONG WITH MEMORANDUM OF POINTS AND AUTHORITIES**

**A.    MOTION TO COMPEL DISCOVERY/PRESERVE EVIDENCE**

As of the date of this Motion, the United States has produced 150 pages of discovery (including reports of the arresting officers and agents, criminal history reports, documents from Defendant's A-File concerning Defendant's prior convictions, immigration history, and citizenship) and one cassette tape of Defendant's civil deportation hearing held before an immigration judge on August 8, 1997. The United States will continue to comply with its obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jenks Act (18 U.S.C. § 3500 et seq.), and Rule 16 of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P."). At this point the United States has received no reciprocal discovery. In view of the below-stated position of the United States concerning discovery, the United States respectfully requests the Court issue no orders compelling specific discovery by the United States at this time.

**1, 2.    Defendant's Statements And Arrest Reports**

The United States has turned over a number of investigative reports, including those which disclose the substance of Defendant's oral statements made in response to routine questioning by United States' law enforcement officers. If additional reports by United States' agents come to light, the United States will supplement its discovery. The United States recognizes its obligations under Fed. R. Crim. P. 16(a)(1)(A) to disclose "the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement in trial." However, the United States is not required under Fed. R. Crim. P. 16 to deliver oral statements, if any, made by a defendant to persons who are not United States' agents. Nor is the United States required to produce oral statements, if any, voluntarily made by a defendant to United States' agents. See United States v. Hoffman, 794 F.2d 1429, 1432 (9th Cir. 1986); United States v. Stoll, 726 F.2d 584, 687-88 (9th Cir. 1984). Fed. R. Crim. P. 16 does not require the United States to produce statements by Defendant that it does not intend to use at trial. Moreover, the United States will not produce rebuttal evidence in advance of trial. See United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984). The United States also objects to Defendant's request for an order

1  for production of any rough notes of United States' agents that may exist.  Production of these notes,
2  if any exist, is unnecessary because they are not "statements" within the meaning of the Jencks Act
3  unless they contain a substantially verbatim narrative of a witness' assertions <u>and</u> they have been
4  approved or adopted by the witness.  <u>See</u> discussion <u>infra</u> Part III.A.19; <u>see also</u> <u>United States v.</u>
5  <u>Alvarez</u>, 86 F.3d 901, 906 (9th Cir. 1996); <u>United States v. Bobadilla-Lopez</u>, 954 F.2d 519, 522 (9th
6  Cir. 1992).  The production of agents' notes is not required under Fed. R. Crim. P. 16 because the
7  United States has "already provided defendant with copies of the formal interview reports prepared
8  therefrom."  <u>United States .v Griffin</u>, 659 F.2d 932, 941 (9th Cir. 1981).  In addition, the United States
9  considers the rough notes of its agents to be United States' work product, which Fed. R. Crim. P.
10 16(a)(2) specifically exempts from disclosure.

11 The United States objects to providing Defendant with records from the Treasury Enforcement
12 Communications System ("TECS").  TECS reports are not subject to Fed. R. Crim. P. 16(c) because the
13 reports are neither material to the preparation of the defense, nor intended for use by the United States
14 as evidence during its case-in-chief.  The TECS reports are not <u>Brady</u> material because the TECS reports
15 do not present any material exculpatory information or any evidence favorable to Defendant that is
16 material to guilt or punishment.  If the United States intends to introduce TECS information at trial,
17 discovery of the relevant TECS reports will be made at least by the time of the filing of its trial
18 memorandum.

19         **3.**      ***Brady*** **Material**

20 The United States has complied and will continue to comply with its obligations under <u>Brady</u>
21 <u>v. Maryland</u>, 373 U.S. 83 (1963).  Under <u>Brady</u> and <u>United States v. Agurs</u>, 427 U.S. 97 (1976), the
22 government need <u>not</u> disclose "every bit of information that might affect the jury's decision."  <u>United</u>
23 <u>States v. Gardner</u>, 611 F.2d 770, 774-75 (9th Cir. 1980).  The standard for disclosure is materiality.  <u>Id</u>.
24 "Evidence is material under <u>Brady</u> only if there is a reasonable probability that the result of the
25 proceeding would have been different had it been disclosed to the defense."  <u>United States v.</u>
26 <u>Antonakeas</u>, 255 F.3d 714, 725 (9th Cir. 2001).

27 The United States will also comply with its obligations to disclose exculpatory evidence under
28 <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).  Furthermore, impeachment evidence may constitute <u>Brady</u>

1  material "when the reliability of the witness may be determinative of a criminal defendant's guilt or
2  innocence." United States v. Blanco, 392 F.3d 382, 387 (9th Cir. 2004) (internal quotation marks
3  omitted). However, the United States will not produce rebuttal evidence in advance of trial. See United
4  States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

### 4. Any Information That May Result in a Lower Sentence

6  Defendant claims that the United States must disclose information affecting Defendant's
7  sentencing guidelines because such information is discoverable under Brady v. Maryland, 373 U.S. 83
8  (1963). The United States respectfully contends that it has no such disclosure obligation under Brady.

9  The United States is not obligated under Brady to furnish a defendant with information which
10 he already knows. See United States v. Taylor, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986). Brady is a rule
11 of disclosure, and therefore, there can be no violation of Brady if the evidence is already known to the
12 defendant. In such case, the United States has not suppressed the evidence and consequently has no
13 Brady obligation. See United States v. Gaggi, 811 F.2d 47, 59 (2d Cir. 1987).

14 But even assuming Defendant does not already possess the information about factors which
15 might affect his guideline range, the United States would not be required to provide information bearing
16 on Defendant's mitigation of punishment until after Defendant's conviction or plea of guilty and prior
17 to his sentencing date. See United States v. Juvenile Male, 864 F.2d 641, 647 (9th Cir. 1988) ("No
18 [Brady] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure
19 remains in value."). Accordingly, Defendant's demand for this information is unwarranted.

### 5. Defendant's Prior Record

21 The United States has already provided Defendant with a copy of his criminal record and related
22 court documents, in accordance with Fed. R. Crim. P. 16(a)(1)(D).

### 6. Any Proposed 404(b) or 609 Evidence

24 The United States has complied and will continue to comply with its obligations under
25 Rules 404(b) and 609 of the Federal Rules of Evidence ("Fed. R. Evid."). The United States has already
26 provided Defendant with a copy of his criminal record, in accordance with Fed. R. Crim. P. 16(a)(1)(D).

27 Furthermore, the United States objects to Defendant's request for "notice [to] be given three
28 weeks before trial." [Def. Mot. at 3.] Defendant cites no authority for this time restriction, and

1 therefore, pursuant to Fed. R. Evid. 404(b), the United States will provide Defendant with **reasonable**
2 **notice** before trial of the general nature of the evidence of any extrinsic acts that it intends to use at trial.
3 See FED. R. EVID. 404(b), advisory committee's note ("[T]he Committee opted for a generalized notice
4 provision which requires the prosecution to appraise the defense of the general nature of the evidence
5 of extrinsic acts. The Committee does not intend that the amendment will supercede other rules of
6 admissibility or disclosure[.]").

7 The United States puts Defendant on notice that he has the criminal convictions listed above in
8 Section I.C. of this response. In particular, Defendant has felony convictions on: (1) July 24, 1991 for
9 violating California Penal Code § 459 (second-degree burglary); (2) June 12, 1992 for violating
10 California Penal Code § 459 (second-degree burglary); (3) December 15, 1993 for violating California
11 Vehicle Code § 10851 (taking a vehicle without consent); (4) September 14, 2000 for violating
12 California Penal Code § 459 (first-degree residential burglary); and (5) October 1, 2004 for violating
13 8 U.S.C. § 1325 (illegal reentry). It is the United States' position that if Defendant testifies at trial, he
14 would do so to dispute at least one of the elements of the charges brought against him, and therefore,
15 his credibility would squarely be at issue. As such, the United States intends to use these felony
16 convictions as impeachment evidence pursuant to Fed. R. Evid. 609. Additionally, the United States
17 may use Defendant's prior apprehensions and prior removals on February 2, 1993, August 9, 1997,
18 October 9, 2001, and October 6, 2006, as substantive evidence to show intent, knowledge, and lack of
19 mistake pursuant to Rule 404(b). In addition, the United States may use the certified transcript of
20 Defendant's guilty plea to violating 8 U.S.C. § 1325 on October 1, 2004 to prove substantive elements
21 of the present offense charged.

22 ### 7, 10.  Evidence Seized and Tangible Objects

23 The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(E)
24 in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all
25 evidence seized and/or tangible objects that are within the possession, custody, or control of the United
26 States, and that are either material to the preparation of Defendant's defense, or are intended for use by
27 the United States as evidence during its case-in-chief, or were obtained from or belongs to Defendant.
28 / /

The United States need not, however, produce rebuttal evidence in advance of trial. See United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

### 8. Request for Preservation of Evidence

The United States will preserve all evidence pursuant to an order issued by this Court. The United States objects to an overbroad request to preserve all physical evidence. The United States does not oppose Defendant's request to inspect the firearm and ammunition possessed by and seized from Defendant in the instant offense.

### 9. *Henthorn* Materials

While not specifically mentioned in Defendant's discovery motion, the United States has complied and will continue to comply with United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) by requesting that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the United States intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. See United States v. Booth, 309 F.3d 566, 574 (9th Cir. 2002) (citing United States v. Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992)). If the materiality of incriminating information in the personnel files is in doubt, the information will be submitted to the Court for an in camera inspection and review.

### 11. Expert Witnesses

The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(G) and provide Defendant with notice and a written summary of any expert testimony that the United States intends to use during its case-in-chief at trial under Fed. R. Evid. 702, 703, or 705. The United States objects to Defendant's request to provide such notice three weeks before trial as it is not required by any rule of law.

### 12, 14, 15, 20. Evidence of Bias or Motive to Lie / Impeachment Evidence/ Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling / *Giglio* Material

The United States will comply with its obligations to disclose impeachment evidence under Giglio v. United States, 405 U.S. 150 (1972). Moreover, the United States will disclose impeachment evidence, if any exists, when it files its trial memorandum, although it is not required to produce such

material until after its witnesses have testified at trial or at a hearing. See United States v. Bernard, 623 F.2d 551, 556 (9th Cir. 1979).

The United States recognizes its obligation to provide information related to the bias, prejudice or other motivation of United States' trial witnesses as mandated in Napue v. Illinois, 360 U.S. 264 (1959). The United States will provide such impeachment material in its possession, if any exists, at the time it files its trial memorandum. At this time, the United States is unaware of any prospective witness that is biased or prejudiced against Defendant or that has a motive to falsify or distort his or her testimony. The United States is unaware of any evidence that any United States witness' ability to perceive, recollect, communicate or tell the truth is impaired.

### 13. **Evidence of Criminal Investigation of Any United States' Witness**

The United States objects to Defendant's overbroad request for evidence of criminal investigations by federal, state, or local authorities into prospective government witnesses. The United States is unaware of any rule of discovery or Ninth Circuit precedent that entitles Defendant to any and all evidence that a prospective government witness is under investigation by federal, state or local authorities. Moreover, as discussed above, the United States has no obligation to disclose information not within its possession, custody or control. See United States v. Gatto, 763 F.2d 1040, 1048 (9th Cir. 1985); United States v. Aichele, 941 F.2d 761, 764 (9th Cir. 1991) (California state prisoner's files outside of federal prosecutor's possession); United States v. Chavez-Vernaza, 844 F.2d 1368, 1375 (9th Cir. 1987) (the federal government had no duty to obtain from state officials documents of which it was aware but over which it had no actual control); cf. Beaver v. United States, 351 F.2d 507 (9th Cir. 1965) (Jencks Act refers to "any statement" of a witness produced by United States which is in possession of United States and does not apply to a recording in possession of state authorities).

The United States recognizes and will comply with its obligations under the rules of discovery and Ninth Circuit precedent to disclose exculpatory and impeachment information. The United States also recognizes its obligation to provide information--if any exists--related to the bias, prejudice or other motivation of United States' trial witnesses, as mandated in Napue v. Illinois, 360 U.S. 264 (1959), when it files its trial memorandum.

//

**16, 17.   Witness Addresses and Names of Witnesses Favorable to the Defendant**

The United States objects to Defendant's request for witness addresses and phone numbers. Defendant is not entitled to the production of addresses or phone numbers of possible witnesses for the United States. See United States v. Hicks, 103 F.3d 837, 841 (9th Cir. 1996); United States v. Thompson, 493 F.2d 305, 309 (9th Cir. 1977), cert denied, 419 U.S. 834 (1974). None of the cases cited by Defendant, nor any rule of discovery, requires the United States to disclose witness addresses. There is no obligation for the United States to provide addresses of witnesses that the United States intends to call or not call. Therefore, the United States will not comply with this request.

The United States will produce the names of witnesses it intends to call at trial. Defendant has already received access to the names of potential witnesses through the discovery sent to his counsel. The United States is not aware of any individuals who were witnesses to Defendant's offense except the law enforcement agentes who apprehended him. The names of these individuals have already been provided to Defendant.

**18.   Statements Relevant to the Defense**

The United States objects to the request for "any statement relevant to any possible defense or contention" as overbroad and not required by any discovery rule or Ninth Circuit precedent. Therefore, the United States will only disclose relevant statements made by Defendant pursuant to this request.

**19.   Jencks Act Material**

The United States will fully comply with its discovery obligations under the Jencks Act. For purposes of the Jencks Act, a "statement" is (1) a written statement made by the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness' oral statement, or (3) a statement by the witness before a grand jury. See 18 U.S.C. § 3500(e). Notes of an interview only constitute statements discoverable under the Jencks Act if the statements are adopted by the witness, as when the notes are read back to a witness to see whether or not the government agent correctly understood what the witness said. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)). In addition, rough notes by a government agent "are not producible under the Jencks Act due to the incomplete nature of the notes." United States v. Cedano-Arellano, 332 F.3d 568, 571 (9th Cir. 2004).

Production of this material need only occur after the witness making the Jencks Act statements testifies on direct examination. See United States v. Robertson, 15 F.3d 862, 873 (9th Cir. 1994). Indeed, even material that is potentially exculpatory (and therefore subject to disclosure under Brady) need not be revealed until such time as the witness testifies on direct examination if such material is contained in a witness's Jencks Act statements. See United States v. Bernard, 623 F.2d 551, 556 (9th Cir. 1979). Accordingly, the United States reserves the right to withhold Jencks Act statements of any particular witness it deems necessary until after they testify.

### 21, 22.  Agreements/Informants and Cooperating Witnesses

Defendant incorrectly asserts that Roviaro v. United States, 353 U.S. 52 (1957), establishes a per se rule that the United States must disclose the identity and location of confidential informants used in a case. Rather, the Supreme Court held that disclosure of an informer's identity is required only where disclosure would be relevant to the defense or is essential to a fair determination of a cause. Id. at 60-61. Moreover, in United States v. Jones, 612 F.2d 453 (9th Cir. 1979), the Ninth Circuit held:

> The trial court correctly ruled that the defense had no right to pretrial discovery of information regarding informants and prospective government witnesses under the Federal Rules of Criminal Procedure, the Jencks Act, 18 U.S.C. § 3500, or Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

Id. at 454. As such, the United States is not obligated to make such a disclosure, if there is in fact anything to disclose, at this point in the case.

That said, the United States is unaware of the existence of an informant or any cooperating witnesses in this case. The United States is also unaware of any agreements between the United States and potential witnesses. However, as previously stated, the United States will provide Defendant with a list of all witnesses which it intends to call in its case-in-chief at the time the Government's trial memorandum is filed, although delivery of such a list is not required. See United States v. Dischner, 960 F.2d 870 (9th Cir. 1992); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987); United States v. Culter, 806 F.2d 933, 936 (9th Cir. 1986).

### 23.  Bias by Informants or Cooperating Witnesses

As noted above, the United States recognizes its obligation under Brady and Giglio to provide material evidence that could be used to impeach Government witnesses including material information related to bias or motive to lie.

### 24. Personnel Records

As discussed supra Part III.A.9., the United States will instruct all relevant agencies to review the personnel files of government witnesses for information pertaining to dishonesty or impeachment. Defendant has not cited any authority that requires the United States to produce "citizen complaints and other related internal affairs documents." [Def Motion at 7.] The case cited by Defendant, Pitchess v. Superior Court, 11 Cal.3d 531, 539 (1974) has been superceded by statute. See Fagan v. Superior Court, 111 Cal. App.4th 607 (2003). Moreover, Pitchess involved a criminal case in which a defendant who claimed to have acted in self-defense sought evidence as to the police officers' use of force on previous occasions. Pitchess, 11 Cal. 3d at 534, 535. Pitchess is simply inapplicable to Defendant's case.

### 25. Training of Relevant Law Enforcement Officers

The United States strenuously objects to providing to Defendant a copy of all policies, training instructions, and manuals issued by all law enforcement agencies involved in this case. The requested policies, training instructions, and manuals are irrelevant and do not fall within the scope of Fed. R. Crim. P. 16, or any other statutory or Constitutional disclosure provision. Even if one or more of the inspectors, officers, or special agents violated his or her own administrative regulations, guidelines, or procedures, such violations would not result in the exclusion of evidence if Defendant's Constitutional and statutory rights were not violated in this case. United States v. Caceres, 440 U.S. 741, 744 (1979); United States v. Hinton, 222 F.3d 664 (9th Cir. 2000).

### 26. Residual Request

As indicated, the United States will comply with its discovery obligations in a timely manner.

### B. LEAVE TO FILE FURTHER MOTIONS

The United States does not oppose Defendant's request to file further motions if they are based on new discovery or other information not available to Defendant at the time of this motion hearing.

//
//
//
//
//

**IV**

**CONCLUSION**

For the foregoing reasons, the United States requests the Court deny Defendant's Motion to Compel Discovery and Preserve Evidence, and Grant Leave to File Further Motions, unless unopposed.

DATED: July 28, 2008.

                                          Respectfully submitted,

                                          KAREN P. HEWITT
                                          United States Attorney

                                          /s/ *Joseph J.M. Orabona*
                                          JOSEPH J.M. ORABONA
                                          Assistant United States Attorney